UNITED STATES DISTRICT COURT

DISTRICT OF HAWAII

| | |
|---|---|
| CHARLES BURRELL,<br><br>            Plaintiff,<br><br>    vs.<br><br>KILOLO KIJAKAZI, ACTING<br>COMMISSIONER OF SOCIAL SECURITY;<br><br>            Defendant. | CIV. NO. 23-00142 LEK-RT |

**ORDER: GRANTING IN PART AND DENYING IN PART
PLAINTIFF'S APPEAL; REVERSING THE ADMINISTRATIVE LAW JUDGE'S
DECISION; AND REMANDING THE CASE FOR FURTHER PROCEEDINGS**

Before the Court is Plaintiff Charles Burrell's ("Plaintiff") appeal from Administrative Law Judge Diana Coburn's ("ALJ") December 28, 2021 Decision ("Appeal").[1] Plaintiff's Opening Brief was filed on June 15, 2023. [Dkt. no. 14.] Defendant Kilolo Kijakazi, Acting Commissioner of Social Security ("the Commissioner"), filed the Answering Brief on July 11, 2023, and Plaintiff filed his Reply Brief on July 31, 2023. [Dkt. nos. 16, 17.] The Court finds this matter

---

[1] The Decision, including the Notice of Decision – Unfavorable and the List of Exhibits, is available in the Administrative Record Dated April 26, 2023 ("AR") at 12-35. [AR, filed 5/17/23 (dkt. no. 5), Documents Related to Administrative Process Including Transcript of Oral Hearing, if applicable (dkt. no. 5-3) at PageID.30-50.] The Appeals Council denied Plaintiff's request for review on January 30, 2023. [Notice of Appeals Council Action ("AC Notice"), AR at 1-5 (dkt. no. 5-3 at PageID.16-20).]

suitable for disposition without oral argument pursuant to
Rule LR7.1(c) of the Local Rules of Practice for the United
States District Court for the District of Hawaii ("Local
Rules"). For the reasons set forth below, Plaintiff's Appeal is
granted in part and denied in part. The matter is remanded to
the ALJ for further proceedings consistent with this Order.

<u>**BACKGROUND**</u>

On March 29, 2019, Plaintiff protectively filed a
Title II application for disability and disability insurance
benefits, alleging he was disabled as of August 31, 2018.
Plaintiff's claim was denied, initially and on reconsideration.
On October 8, 2019, Plaintiff filed a written request for a
hearing. Plaintiff and Timothy J. Farrell, an impartial
vocational expert ("VE"), testified at the October 27, 2021
hearing. [Decision, AR at 18 (dkt. no. 5-3 at PageID.33).]

Plaintiff testified that, in August 2018, he was
involved in a motorcycle accident, and he has not been able to
look for work since that time because of a lack of strength,
impaired mobility, dizziness, and extreme pain. He also
testified that he has difficulty concentrating on a task for
more than five minutes at a time. <u>See</u> Social Security
Administration Office of Disability Adjudication and Review
Transcript of 10/27/21 hearing ("Hrg. Trans."), AR at 40-41
(dkt. no. 5-3 at PageID.55-56). Plaintiff did not suffer any

2

broken bones in the motorcycle accident, but he had abrasions, and the accident caused bulging C3/C4 and C4/C5 discs on his left side. He also initially lost full mobility in his left arm. [Id. at 51 (dkt. no. 5-3 at PageID.66).]

Plaintiff testified that he is constantly in pain from the back of his skull, down through the left side of his neck to his left elbow and ribcage. The rest of his body aches because of his compensation for the problems on his left side. Plaintiff cannot turn his head to the left at all, and he can only turn approximately six inches to his right. [Id. at 41-42 (dkt. no. 5-3 at PageID.56-57).] Looking down and writing, such as to write a letter or fill out a form, causes pain in the back of Plaintiff's skull, and he would have to take a break after a few minutes. [Id. at 43 (dkt. no. 5-3 at PageID.58).] Plaintiff also testified that, when he writes, he "get[s] lost in what [he] ha[s] to do so [he] ha[s] to reread it and continue" after taking a ten-to-fifteen-minute break. [Id.]

Plaintiff cannot reach overhead with his left arm. At the start of the day, he can raise his left arm "about half way up, [but] by the end, [he] can't at all." [Id.] He sometimes has discomfort in his shoulder and the side of his neck when he reaches overhead with his right arm. [Id.] Plaintiff also has weakness in his hands, and he has difficulty zipping up a pants zipper. Even lifting a pencil with his left hand causes

3

Plaintiff pain and, if he holds it for longer than approximately five minutes, he drops it. [Id. at 44 (dkt. no. 5-3 at PageID.59).]

Any movement of Plaintiff's left arm causes him pain. Even standing in one place causes him discomfort in his knees, upper back, shoulders, and thoracic region. He can only stand in one place for approximately ten minutes before he has to sit, or preferably lie down, for approximately ten minutes to relieve the pain. However, Plaintiff experiences dizziness when he stands up from a seated position. Plaintiff also tries not to walk for more than ten minutes at a time before taking a break. [Id. at 44-45 (dkt. no. 5-3 at PageID.59-60).] Sitting does not cause Plaintiff as much discomfort as walking and standing, but it causes him some discomfort, and he has to shift in his seat every three to five minutes so that the pain does not reach the level of the pain that he experiences standing and walking. When he is at home, the most comfortable position for him is lying down with wedges under his back. Plaintiff testified that he spends eighty to eighty-five percent of his average day lying down, but sometimes it is all day. [Id. at 46 (dkt. no. 5-3 at PageID.61).]

Plaintiff also testified that he has episodes where he loses consciousness, without any apparent triggering event. The last time prior to the October 27, 2021 hearing that he had such

an episode was at the end of August, but he could not remember
how many episodes he had in the year prior to the hearing.
Plaintiff had not noticed any improvement in this condition with
medication. [Id. at 47-48 (dkt. no. 5-3 at PageID.62-63).]
Plaintiff also described a burning sensation from the base of
his neck to his ribcage that "feels like somebody is trying to
push out on [his] ribcage." [Id. at 48 (dkt. no. 5-3 at
PageID.63).] Although he previously experienced this sensation
after eating, he now experiences it even when he "take[s] a few
sips of water or anything that [he has to] digest," and he feels
this discomfort for a total of approximately eight to ten hours
a day. [Id.] Plaintiff only gets two to three hours of sleep a
night because of his pain and because of the burning sensation
that he feels. The lack of sleep causes Plaintiff to have very
little energy during the day, which makes it hard for him to
concentrate on tasks. [Id. at 46-47 (dkt. no. 5-3 at PageID.61-
62).]

Plaintiff has been treated for depression. He
experiences lack of motivation, and he does not want to go
outside or be around other people. Some days he does not want to
get up. On bad days, he lays on the couch all day and does not
answer the phone. Plaintiff's friends will stop by to make sure
that he has water and that his other needs are met. This usually
happens two or three times a week. [Id. at 49 (dkt. no. 5-3 at

PageID.64).] On his bad days, he does not even get off the couch to use the bathroom. [Id. at 52 (dkt. no. 5-3 at PageID.67).] Plaintiff is able to go grocery shopping with a friend, and he has a friend who "helps [him] do the laundry and get stuff together." [Id. at 49 (dkt. no. 5-3 at PageID.64).]

Plaintiff testified that all of his symptoms are the result of the motorcycle accident. He had seizures before the accident, but he had not had a seizure for ten years prior to the accident. In addition, the blackouts that he began experiencing after the accident were "nothing like [his] old seizures[.]" [Id. at 50 (dkt. no. 5-3 at PageID.65).] Plaintiff's pain and his issues with his mobility have increased since the time of the accident, but the frequency of his blackouts vary, i.e. "[s]ometimes it's two months, sometimes five" between blackouts. [Id.]

Plaintiff acknowledged that, two months after the motorcycle accident, he could run half a mile every day, and he would swim at the beach as part of his physical therapy. [Id. at 51 (dkt. no. 5-3 at PageID.66).] Around that time, his "mobility got better but [his] swelling and everything else got worse." [Id.] A year or two before the hearing, Plaintiff suffered a fall when his "leg just went numb and [he] just went flat on [his] face." [Id.] Since that time, Plaintiff's pain and swelling increased, and "by the time it went back down [his]

6

knees lock[ed] up if [he] d[id]n't stay mobile, so now [he] look[s] like an old man walking." [Id. at 52 (dkt. no. 5-3 at PageID.67).]

Plaintiff testified that he no longer goes to physical therapy because he used all of the sessions that he was approved for. [Id.] Plaintiff does not take pain medication because his doctors have not found one that works for him. He had blocks and injections in his spine on several occasions, but they only helped for a day or two at the most. His doctors have also informed him that he is not a candidate for surgery because of the amount of swelling that he has. [Id. at 41-42 (dkt. no. 5-3 at PageID.56-57).] His doctors have prescribed him seven or eight different types of pain medications, but he could not remember which ones. [Id. at 53 (dkt. no. 5-3 at PageID.68).]

The VE testified that there were three occupations which exist in significant numbers in the national economy that a hypothetical person who has the limitations that the ALJ ultimately included in Plaintiff's residual functional capacity ("RFC") could perform – cashier, cafeteria attendant, and office helper. See id. at 57 (dkt. no. 5-3 at PageID.72) (response to hypothetical number 2).[2] The ALJ's hypothetical numbers 3 and 4

---

[2] Hypothetical number 2 was the same as hypothetical number 1, except that number 2 added "simple, routine, repetitive tasks but not at a production rate of pace, simple
(. . . continued)

and the VE's response are not relevant to the instant appeal.
See id. at 58-59 (dkt. no. 5-3 at PageID.73-74). In hypothetical
number 5, the ALJ posed a hypothetical person who would be off-
task for twenty percent of the day because of concentration
issues, and the VE testified that the person could not perform
any work. [Id. at 59 (dkt. no. 5-3 at PageID.74).]

Plaintiff's counsel asked the VE whether there were
any occupations that could be performed by a person, with the
limitations listed by the ALJ in hypothetical number 1, who
would miss at least three workdays per month. The VE responded
that there would not be any jobs that for that hypothetical
individual. [Id. at 59 (dkt. no. 5-3 at PageID.74).]

In the Decision, the ALJ found that Plaintiff was
insured, for purposes of the Social Security Act, through
December 31, 2024. [Decision, AR at 20 (dkt. no. 5-3 at
PageID.35).] At step one of the five-step sequential analysis to
determine whether a claimant is disabled, the ALJ found that
Plaintiff had not engaged in substantial gainful employment
since August 31, 2018, the alleged onset date. [Id.]

work-related decisions, occasionally manage changes in the work
setting and occasional decision making." [Hrg. Trans., AR at 56-
57 (dkt. no. 5-3 at PageID.71-72).] The possible occupations
were the same for hypothetical numbers 1 and 2. [Id. at 57 (dkt.
no. 5-3 at PageID.72).]

At step two, the ALJ found that Plaintiff had the following severe impairments: "epilepsy; cervical degenerative disc disease; post-traumatic stress disorder (PTSD); and depression." [Id. (citing 20 CFR 404.1520(c)).] The ALJ also noted that Plaintiff had a number of other impairments which were not severe, including obesity and "neuropathy, history of knee surgery, eardrum rupture, and gastroesophageal reflux disease" ("GERD"). [Id. at 20-21 (dkt. no. 5-3 at PageID.35-36) (citations omitted).] The ALJ found that these impairments were not severe because they "were being managed medically and should be amenable to proper control by adherence to recommended medical management and medication compliance" and because "no aggressive treatment was recommended or anticipated for these conditions." [Id.]

At step three, the ALJ found that none of Plaintiff's impairments, either individually or in combination, met or equaled one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. [Decision, AR at 21 (dkt. no. 5-3 at PageID.36 (citing 20 CFR 404.1520(d), 404.1525, 404.1526).]

In the step four analysis, the ALJ in Plaintiff's RFC:

> perform light work as defined in 20 CFR 404.1567(b) except he must never climb ladders, ropes, or scaffolds; he can occasionally climb ramps and stairs, balance, stoop, kneel crouch, and crawl; he can frequently reach overhead with the non-dominant left upper extremity; he is precluded from exposure to dangerous moving

9

> machinery and unprotected heights; he can perform
> simple, routine, and repetitive tasks, but not at
> production rate of pace; he can make simple work-
> related decisions; he can occasionally manage
> changes in the work setting; and he can
> occasionally make decisions.

[Id. 23 (dkt. no. 5-3 at PageID.38).] The ALJ found that

Plaintiff's impairments could reasonably be expected to cause

the symptoms Plaintiff described, but Plaintiff's testimony

about the intensity, persistence, and limiting effects of his

symptoms was not consistent with the medical evidence and other

evidence in the record. [Id. at 24 (dkt. no. 5-3 at PageID.39).]

The ALJ first found that Plaintiff's activities were

inconsistent with his testimony about the extent of his

symptoms.

> The claimant's daily activities included jogging,
> swimming, working out on a daily basis, preparing
> meals, working on starting a restaurant, living
> alone, using public transportation, core
> training, watching movies, working on cars,
> maintaining his grooming and hygiene, cooking,
> preparing simple meals, doing the laundry,
> driving, shopping in stores, managing his
> finances, and spending time with his friends
> (Exs. 5E; 3F/38-39; 4F/24; 8F/1; 9F/23, 68;
> 12F/8; 14F/2).[3] These activities are

---

[3] Exhibit 5E is Plaintiff's Function Report - Adult, dated
May 6, 2019 ("Plaintiff's Function Report"). [AR at 222-29 (dkt.
no. 5-7 at PageID.241-48).] Exhibit 3F is the Health Information
Technology (HIT) Medical Report for Kaiser Permanente ("Kaiser")
for the period from September 22, 2019 to September 4, 2020
("Kaiser HIT Report for 8/31/17-4/23/19"). [AR at 361-471 (dkt.
no. 5-8 at PageID.381-491).] Exhibit 4F is the Office Treatment
record obtained by Cyrca, Inc. for the period from April 17,
2019 to July 3, 2019 ("Cyrca Records"). [AR at 472-527 (dkt.
(. . . continued)

> specifically inconsistent with the claimant's
> subjective complaints.

[Id. at 25-26 (dkt. no. 5-3 at PageID.40-41).]

The ALJ also noted that Plaintiff did not have atrophy
in his upper or lower extremities or "loss of muscle tone, bulk,
mass, or strength," all of which would have been expected if
Plaintiff were experiencing the degree of pain and lack of
mobility that he described. [Id. at 26 (dkt. no. 5-3 at
PageID.41).] The ALJ further noted Plaintiff failed to comply
with prescribed medication, which could indicate that Plaintiff
was "unwilling[] to do what is necessary to improve his
condition" or "that his symptoms are not as severe as he
purports." [Id. at 27 (dkt. no. 5-3 at PageID.42) (citing
Exh. 9F/65).[4]]

---

no. 5-8 at PageID.492-547).] Exhibit 8F is the Office Treatment
record from DHS for the period from June 29, 2019 to June 24,
2020 ("DHS Records for 6/29/19-6/24/20"). [AR at 611-25 (dkt.
no. 5-9 at PageID.632-46).] Exhibit 9F is the Health Information
Technology (HIT) Medical Report for Kaiser Permanente for the
period from September 22, 2019 to September 4, 2020 ("Kaiser HIT
Report for 9/22/19-9/4/20"). [AR at 626-789 (dkt. no. 5-10 at
PageID.648-811).] Exhibit 12F is DHS's office treatment records
for the period from March 27, 2020 to April 30, 2021 ("DHS
Records from 3/27/22 to 4/30/21"), including the opinions of
Christopher Taylor, M.D., Raymond Thompson, M.D., and Brandon
Teruya, M.D. [AR at 797-815 (dkt. no. 5-11 at PageID.820-38).]
Exhibit 14F is the Psychological Evaluation by Dr. Donovan,
dated July 17, 2021 ("Donovan 7/17/20 Report"). [AR at 1050-56
(dkt. no. 5-12 at PageID.1074-80).]

[4] Exhibit 9F is Kaiser HIT Report for 9/22/19-9/4/20, and
page 65 is the last page of the January 10, 2020 Progress Notes
(. . . continued)

11

The ALJ also stated:

> The claimant's statements regarding the alleged
> intensity, persistence, and limiting effects of
> symptoms are inconsistent with the undersigned's
> personal observations of the claimant. He did not
> demonstrate or manifest any difficulty
> concentrating, understanding, or remembering
> during the hearing. During questioning, he
> appeared to process the questions without
> difficulty, and responded to the questions
> appropriately and without delay. He also paid
> attention throughout the hearing. Although the
> undersigned does not reject the claimant's
> complaints solely on the basis of such personal
> observations, the personal observations are
> considered in terms of how consistent those
> observations are with the claimant's statements
> about his symptoms as well as with all of the
> evidence in the record.

[Id.]

Finally, the ALJ found that the objective medical evidence did not support Plaintiff's testimony about the extent of his symptoms and limitations. The ALJ stated:

> For example, while objective findings were
> documented during physical examinations, they
> were not documented on a consistent basis. The
> findings from the physical examinations were
> within normal limits in some instances
> (Exs. 4F/25, 38; 8F/2, 11). Moreover, the
> findings from the mental status examinations were
> generally within normal limits other than
> occasional mood and affect abnormalities
> (Exs. 9F/14, 19, 21, 23-24, 27, 30, 31-32, 51,
> 59, 68-69; 13F/35, 90).

---

by Dr. Stein. See Exh. 9F, AR at 687-90 (dkt. no. 5-10 at
PageID.709-12).

[Id.[5]]

Turning to the medical opinions in the record, the ALJ specifically addressed the opinions of Graeme Reed, M.D., Dennis Donovan, Ph.D., and Alan Stein, M.D.[6] [Decision, AR at 27-28 (dkt. no. 5-3 at PageID.42-43) (citing Exs. 16F, 14F, 7F/2).[7]] Dr. Reed opined that Plaintiff: could not lift; could only stand and walk three hours a day, even with limitations on the use of his upper and lower extremities; had postural limitations and environmental limitations; and could not drive. The ALJ found

---

[5] Exhibit 4F is Cyrca Records, and page 25 is part of the Progress Notes by Dr. Pang on May 1, 2019. [Exh. 4F, AR at 496 (dkt. no. 5-8 at PageID.516).] Page 38 is part of the Progress Notes by Dr. Kurahashi on May 28, 2019. [Id., AR at 509 (dkt. no. 5-8 at PageID.529).] Exhibit 8F is the DHS Records for 6/29/19-6/24/20, and page 2 is part of a Benefit Employment and Support Services Division Physical Examination Report by Boyuan Cao, M.D. for a June 24, 2020 exam. [Exh. 8F, AR at 612 (dkt. no. 5-9 at PageID.633).] Page 11 is part of a Physical Examination Report by Dr. Lee for a September 28, 2019 exam. [Id. at 621 (dkt. no. 5-9 at PageID.642).] As previously noted, Exhibit 9F is the Kaiser HIT Report for 9/22/19-9/4/20. Exhibit 13F is the Kaiser Hospital Records for the period from October 20, 2020 to May 14, 2021. [AR at 816-1049 (dkt. no. 5-12 at PageID.839-1073).]

[6] Because Plaintiff's appeal does not contest the ALJ's analysis of Dr. Stein's opinion, Dr. Stein's opinion will not be addressed in this Order.

[7] Exhibit 16F is the Consultive Examination Report, dated September 21, 2021, by Consultive Examination Services, Inc. - Graeme Reed, M.D. ("Reed 9/21/21 Report"). [AR at 1109-19 (dkt. no. 5-16 at PageID.1137-47).] Exhibit 14F is the Donovan 7/17/20 Report. Exhibit 7F, page 2 is a Kaiser letter by Dr. Stein, dated May 29, 2020. [AR at (dkt. no. 5-9 at PageID.630).]

these opinions were unpersuasive because they were "not
supported by the benign findings from his examination of
[Plaintiff]," were "inconsistent with the record, which revealed
benign objective findings with routine and conservative
treatment regimen," and were inconsistent with the range of
daily activities Plaintiff was able to perform. [Id. at 27 (dkt.
no. 5-3 at PageID.42).] The ALJ found that Dr. Reed's opinion
about Plaintiff's "ability to engage in postural activities" was
supported by Dr. Reed's objective findings and the record as a
whole. [Id.]

Dr. Donovan found that Plaintiff had marked
limitations in his mental functioning, but the ALJ found the
opinion was unexplained, had minimal support, and was
inconsistent with Dr. Donovan's objective findings. The ALJ also
found that it was inconsistent with the record as a whole,
Plaintiff's "routine and conservative treatment regimen," and
Plaintiff's activities of daily living. [Id. at 27-28 (dkt.
no. 5-3 at PageID.42-43).]

The ALJ generally found that

the opinions of the claimant's doctors[8] that the
claimant is restricted to a range of sedentary

---

[8] Plaintiff asserts this refers to Jay Valdez, Psy.D.;
Boyuan Cao, M.D.; Christopher Taylor, M.D.; Kenneth Kau, M.D.;
Mark Lee, M.D.; Won-Yee Cheng-Leever, M.D.; Tom Harding, Psy.D.;
Raymond Thompson, M.D.; and Brandon Teruya, M.D. See Opening
Brief at 7 & n.1; see also Answering Brief at 5.

exertional work, a range of light exertional work
with the need to miss more than three days of
work per month, mild to extreme limitations in
the broad areas of mental functioning with
inability to function more than 15 percent of an
eight-hour workday, and/or unable to maintain
gainful employment are unpersuasive (Exs. 7F/3;
8F; 10F-12F).[9] These opinions are brief,
conclusory, unsupported, and inconsistent with
the record as a whole. They failed to provide
objective findings to support their opinions.
These opinions are inconsistent with the record,
which revealed minimal and/or benign objective
findings.

[Id. at 28 (dkt. no. 5-3 at PageID.43).]

The ALJ found the opinions of the state agency
consultants, who opined that Plaintiff could perform light work
with postural, manipulative, and environmental limitations, to
be persuasive. The ALJ found that those opinions were supported
by a summary of the record and were consistent with the record
as a whole, with Plaintiff's conservative and routine treatment
regimen, and with his activities of daily living. [Id.] However,
the ALJ found unpersuasive the consultants' opinions that
Plaintiff had to "avoid concentrated exposure to noise" because

---

[9] Exhibit 7F page 3 is a Kaiser letter dated May 27, 2020 by
Dr. Valdez. [AR at 610 (dkt. no. 5-9 at PageID.631).] Exhibit 8F
is the DHS Records for 6/29/19-6/24/20, including reports by
Drs. Cao, Taylor, Kau, Lee. [AR at 611-25 (dkt. no. 5-9 at
PageID.632-46).] Exhibit 10F is Cervical Spine/Shoulder report
by Dr. Cheng-Leever, dated September 28, 2020. [AR at 790-93
(dkt. no. 5-10 at PageID.811-14).] Exhibit 11F is the Medical
Statement of Ability to Do Work Related Activities (Mental),
dated January 28, 2021 by Dr. Harding. [AR at 793-96 (dkt.
no. 5-11 at PageID.816-19).] Exhibit 12F is the DHS Records from
3/27/22 to 4/30/21.

that opinion was not supported and was not consistent with the record as a whole. [Id.]

Thus, in determining Plaintiff's RFC, the ALJ found that "[t]he relevant medical evidence and other evidence in the case record partially support the claimant's statements regarding the alleged intensity, persistence, and limiting effects of symptoms." [Id. at 29 (dkt. no. 5-3 at PageID.44).]

The ALJ "expedited" the assessment of Plaintiff's past relevant work. [Id.]

At step five, the ALJ noted that Plaintiff was in the "younger individual" category on the alleged onset date. [Id. (citing 20 CFR 404.1563).] Further, Plaintiff has at least a high school education. [Id. (citing 20 CFR 404.1564).] The Decision does not address whether Plaintiff has transferable job skills because Plaintiff did not have any past relevant work. [Id. (citing 20 CFR 404.1568).] The ALJ found that, based on Plaintiff's age, education, work experience, and RFC, Plaintiff could make a successful adjustment to the following jobs that exist in significant number in the national economy: Cashier II, cafeteria attendant, and office helper. [Id. at 29-30 (dkt. no. 5-3 at PageID.44-45).] The ALJ therefore found that Plaintiff was not under a disability from the alleged onset date, August 31, 2018, through the date of the Decision. [Id. at 30 (dkt. no. 5-3 at PageID.45) (citing 20 CFR 404.1520(g)).]

16

Plaintiff requested review of the ALJ's decision. [Exh. 19B, AR at 169-71 (dkt. no. 5-5 at PageID.186-88) (request for review of Decision, dated 3/14/22).] As previously noted, the Appeals Council denied Plaintiff's request for review, making the ALJ's Decision the Commissioner's final decision. [AC Notice, AR at 1 (dkt. no. 5-3 at PageID.16).]

In the instant Appeal, Plaintiff argues the Decision should be reversed because: the ALJ erred in the evaluation of medical opinions; the ALJ discredited Plaintiff's testimony without providing clear and convincing reasons; and the ALJ erred in omitting Plaintiff's gastrointestinal disorders from the list of Plaintiff's severe impairments.

### STANDARDS

"A district court has jurisdiction pursuant to 42 U.S.C. § 405(g) to review final decisions of the Commissioner of Social Security." Concannon v. Saul, Civ. No. 19-00267-ACK-RT, 2020 WL 1492623, at *2 (D. Hawaiʻi Mar. 27, 2020), aff'd, No. 20-15732, 2021 WL 2941767 (9th Cir. July 13, 2021).

### I.   Review of Social Security Decisions

The Ninth Circuit conducts a de novo review of a district court's order in a social security appeal. Treichler v. Comm'r of Soc. Sec. Admin., 775 F.3d 1090, 1098 (9th Cir. 2014). Thus, in reviewing the Commissioner's decision, this Court applies the same standards that the Ninth Circuit applies.

A court will only disturb the Commissioner's decision if it is not supported by substantial evidence or if it is based on legal error. Id. "Substantial evidence is more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Hill v. Astrue, 698 F.3d 1153, 1159 (9th Cir. 2012) (citation and internal quotation marks omitted). In reviewing a decision by the Commissioner, a district court must consider the entire record as a whole. Id. Where the record, considered as a whole, could support either affirmance or reversal, the district court must affirm the decision. Attmore v. Colvin, 827 F.3d 872, 875 (9th Cir. 2016). To ensure a court does not substitute its judgment for the ALJ's, it must "'leave it to the ALJ to determine credibility, resolve conflicts in the testimony, and resolve ambiguities in the record.'" Brown-Hunter v. Colvin, 806 F.3d 487, 492 (9th Cir. 2015) (quoting Treichler, 775 F.3d at 1098).

## II.  **Five-Step Analysis**

The following analysis applies in cases involving review of the denial of social security disability benefits.

> To determine whether an individual is disabled within the meaning of the Social Security Act, and therefore eligible for benefits, an ALJ follows a five-step sequential evaluation. See 20 C.F.R. § 404.1520. The burden of proof is on the claimant at steps one through four. See Valentine v. Comm'r of Soc. Sec.

18

Admin., 574 F.3d 685, 689 (9th Cir. 2009). At
step one, the ALJ must determine if the claimant
is presently engaged in a "substantial gainful
activity," § 404.1520(a)(4)(i), defined as "work
done for pay or profit that involves significant
mental or physical activities," Lewis v. Apfel,
236 F.3d 503, 515 (9th Cir. 2001) (citing
§§ 404.1571–404.1572, 416.971–416.975). At step
two, the ALJ decides whether the claimant's
impairment or combination of impairments is
"severe," § 404.1520(a)(4)(ii), meaning that it
significantly limits the claimant's "physical or
mental ability to do basic work activities,"
§ 404.1522(a); see Webb v. Barnhart, 433 F.3d
683, 686 (9th Cir. 2005).

At step three, the ALJ evaluates whether the
claimant has an impairment, or combination of
impairments, that meets or equals the criteria of
any of the impairments listed in the "Listing of
Impairments" (referred to as the "listings"). See
§ 404.1520(a)(4)(iii); 20 C.F.R. Pt. 404 Subpt.
P, App. 1 (pt. A). The listings describe
impairments that are considered "to be severe
enough to prevent an individual from doing any
gainful activity." § 404.1525(a). Each impairment
is described in terms of "the objective medical
and other findings needed to satisfy the criteria
of that listing." § 404.1525(c)(3). "For a
claimant to show that his impairment matches a
listing, it must meet all of the specified
medical criteria. An impairment that manifests
only some of those criteria, no matter how
severely, does not qualify." Sullivan v. Zebley,
493 U.S. 521, 530, 110 S. Ct. 885, 107 L. Ed. 2d
967 (1990) (footnote omitted).[10] If an
impairment does not meet a listing, it may
nevertheless be "medically equivalent to a listed
impairment" if the claimant's "symptoms, signs,
and laboratory findings are at least equal in
severity to" those of a listed impairment.
§ 404.1529(d)(3). But a claimant cannot base a
claim of equivalence on symptoms alone. Even if

---

[10] Sullivan has been superseded by statute on other grounds.
See, e.g., Kennedy v. Colvin, 738 F.3d 1172, 1174 (9th Cir.
2013).

the claimant alleges pain or other symptoms that
makes the impairment more severe, the claimant's
impairment does not medically equal a listed
impairment unless the claimant has signs and
laboratory findings that are equal in severity to
those set forth in a listing. § 404.1529(d)(3).
If a claimant's impairments meet or equal the
criteria of a listing, the claimant is considered
disabled. § 404.1520(d).

If the claimant does not meet or equal a
listing, the ALJ proceeds to step four, where the
ALJ assesses the claimant's residual functional
capacity (RFC) to determine whether the claimant
can perform past relevant work, § 404.1520(e),
which is defined as "work that [the claimant has]
done within the past 15 years, that was
substantial gainful activity, and that lasted
long enough for [the claimant] to learn to do
it," § 404.1560(b)(1). If the ALJ determines,
based on the RFC, that the claimant can perform
past relevant work, the claimant is not disabled.
§ 404.1520(f).

At step five, the burden shifts to the
agency to prove that "the claimant can perform a
significant number of other jobs in the national
economy." Thomas v. Barnhart, 278 F.3d 947, 955
(9th Cir. 2002). To meet this burden, the ALJ may
rely on the Medical-Vocational Guidelines found
at 20 C.F.R. Pt. 404 Subpt. P, App. 2,4 or on the
testimony of a vocational expert. Tackett v.
Apfel, 180 F.3d 1094, 1101 (9th Cir. 1999). "[A]
vocational expert or specialist may offer expert
opinion testimony in response to a hypothetical
question about whether a person with the physical
and mental limitations imposed by the claimant's
medical impairment(s) can meet the demands of the
claimant's previous work, either as the claimant
actually performed it or as generally performed
in the national economy." § 404.1560(b)(2). An
ALJ may also use "other resources, such as the
'Dictionary of Occupational Titles' and its
companion volumes and supplements, published by
the Department of Labor." Id.

> Throughout the five-step evaluation, the ALJ "is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995).

Ford v. Saul, 950 F.3d 1141, 1148-49 (9th Cir. 2020) (some alterations in Ford) (footnotes omitted).

## **DISCUSSION**

## I.   **Plaintiff's Severe Impairments**

This Court first turns Plaintiff's argument that the ALJ erred by failing to include Plaintiff's GERD and other gastrointestinal disorders among Plaintiff's severe impairments. In rejecting a similar argument, this Court has noted:

> The Ninth Circuit has stated:
>
>> Step two is merely a threshold determination meant to screen out weak claims. Bowen v. Yuckert, 482 U.S. 137, 146-47, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987). It is not meant to identify the impairments that should be taken into account when determining the RFC. In fact, "[i]n assessing RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'" *Titles II & XVI: Assessing Residual Functional Capacity in Initial Claims*, Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, at *5 (S.S.A. July 2, 1996). The RFC therefore **should** be exactly the same regardless of whether certain impairments are considered "severe" or not.
>
> Buck v. Berryhill, 869 F.3d 1040, 1048-49 (9th Cir. 2017) (alteration and emphasis in Buck). When step two is decided in the claimant's favor, "he could not possibly have been prejudiced," and

"[a]ny alleged error is therefore harmless and
cannot be the basis for a remand." See id. at
1049 (citation omitted).

Here, "[b]ecause step two was decided in
[Yamasaki's] favor, and the ALJ went on to
consider steps three through five, [Yamasaki]
could not have been prejudiced by any error in
the ALJ's determination as to which of
[Yamasaki's] impairments are severe." See Deckard
v. Saul, Case No. 18-cv-04301-BLF, 2020 WL
1157026, at *4 (N.D. Cal. Mar. 10, 2020) (citing
Buck, 869 F.3d at 1049); see also Kay N. v. Saul,
Case No. 2:20-cv-04741-MAA, 2021 WL 1612088, at
*3 (C.D. Cal. Apr. 26, 2021) ("As an initial
matter, any alleged error by the ALJ in
classifying Plaintiff's mental impairments as
non-severe at step two is not the basis for
reversal, because the ALJ resolved step two in
Plaintiff's favor by finding that Plaintiff did
have other severe impairments." (citing Buck v.
Berryhill, 869 F.3d 1040, 1048-49 (9th Cir.
2017))). Thus, the ultimate issue is not whether
the ALJ erred at step two, but whether the ALJ
failed to consider all of Yamasaki's impairments
in assessing his RFC.

Yamasaki v. Kijakazi, CIV. NO. 21-00117 LEK-KJM, 2022 WL
1748413, at *7 (D. Hawai`i May 31, 2022) (alterations in and
emphasis in Yamasaki).

Plaintiff's argument fails for the same reasons. The
ALJ resolved step two in Plaintiff's favor and found that
Plaintiff had severe impairments. Although the ALJ did not
include any gastrointestinal disorders among Plaintiff's severe
impairments, the ALJ's RFC finding should have incorporated
Plaintiff's limitations from all of Plaintiff's impairments,
severe and non-severe. Thus, the issue is not whether

22

Plaintiff's gastrointestinal disorders should have been included at step two, but rather whether the ALJ failed to consider Plaintiff's testimony about the limiting effects of his gastrointestinal disorders.

To the extent that the Appeal contends that the failure to include any gastrointestinal disorders among Plaintiff's severe impairments constituted reversible error, the Appeal is denied.

## II.  **Whether It Was Error to Discount Plaintiff's Testimony**

This Court next turns to Plaintiff's argument that the ALJ erred in discrediting his subjective symptom testimony. The ALJ found that Plaintiff's allegations about the extent and limiting effects of his symptoms were not "fully supported by the objective evidence" because: they were inconsistent with his activities of daily living; they were not supported by the medical records; they were inconsistent with the Hearings Officer's personal observations of Plaintiff; and they were inconsistent with the level of treatment that Plaintiff received. [Decision, AR at 25-27 (dkt. no. 5-3 at PageID.40-42).]

The Ninth Circuit has stated:

To discredit a claimant's symptom testimony when the claimant has provided objective medical evidence of the impairments which might reasonably produce the symptoms or pain alleged and there is no evidence of malingering, the ALJ

23

> must give specific, clear, and convincing reasons
> for rejecting the testimony by identifying which
> testimony the ALJ found not credible and
> explaining which evidence contradicted that
> testimony.

Laborin v. Berryhill, 867 F.3d 1151, 1155 (9th Cir. 2017)

(brackets, emphases, citation, and internal quotation marks

omitted). Further, those reasons must be supported by

substantial evidence. Marsh v. Colvin, 792 F.3d 1170, 1174 n.2

(9th Cir. 2015).

The ALJ found that Plaintiff's "medically determinable

impairments could reasonably be expected to cause the alleged

symptoms[,]" [Decision, AR at 24 (dkt. no. 5-3 at PageID.39),]

and the Decision does not contain a finding that Plaintiff is

malingering. The ALJ was therefore required to give specific,

clear, and convincing reasons, supported by substantial

evidence, for rejecting Plaintiff's testimony about the extent

and limiting effects of his symptoms. The ALJ did give clear and

specific reasons in this case. However, this Court finds that

those reasons were not supported by substantial evidence.

A.   **Activities of Daily Living**

Contradiction of the claimant's testimony and

"meet[ing] the threshold for full-time work[ are] the two

grounds [the Ninth Circuit] ha[s] recognized for using daily

activities to form a basis of an adverse credibility

determination." Smith v. Kijakazi, 14 F.4th 1108, 1114 (9th Cir.

2021) (citing Orn v. Astrue, 495 F.3d 625, 639 (9th Cir. 2007)).

The Ninth Circuit has stated:

> Several courts, including this one, have recognized that disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations. See, e.g., Cohen [v. Sec'y of Dep't of Health & Human Servs.], 964 F.2d [524,] 530–31 [(6th Cir. 1992)] (ruling that a claimant should not be penalized for attempting to maintain some sense of normalcy in her life); Cooper v. Bowen, 815 F.2d 557, 561 (9th Cir. 1987) (noting that a disability claimant need not "vegetate in a dark room" in order to be deemed eligible for benefits). See also Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989) ("Many home activities are not easily transferable to . . . the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication.").[11] Only if the level of activity were inconsistent with Claimant's claimed limitations would these activities have any bearing on Claimant's credibility.

Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998) (some

alterations in Reddick).

The ALJ found that the following activities were

inconsistent with Plaintiff's subjective symptom testimony:

"jogging, swimming, working out on a daily basis, preparing

meals, working on starting a restaurant, living alone, using

public transportation, core training, watching movies, working

on cars, maintaining his grooming and hygiene, cooking,

---

[11] Fair was superseded on other grounds by 20 C.F.R. § 404.1502(a). See, e.g., Mata v. Kijakazi, No. 22-35482, 2023 WL 3836421, at *3 (9th Cir. June 6, 2023).

preparing simple meals, doing the laundry, driving, shopping in stores, managing his finances, and spending time with his friends." Decision, AR at 25-26 (dkt. no. 5-3 at PageID.40-41) (citing Exs. 5E; 3F/38-39; 4F/24; 8F/1; 9F/23, 68; 12F/8; 14F/2)); see also id., AR at 22 (dkt. no. 5-3 at PageID.37) (noting Plaintiff stated he could "swim all day").

At the hearing, the ALJ asked Plaintiff about a note in Plaintiff's records stating that, two months after the motorcycle accident, Plaintiff was running half a mile per day and swimming all day. See Hrg. Trans at 51 (dkt. no. 5-3 at PageID.66); see also id. at 54 (dkt. no. 5-3 at PageID.69) (identifying Exhibit 3F, page 38, as the exhibit mentioning that Plaintiff ran every day).

Exhibit 3F, page 38 is part of the notes for Plaintiff's October 4, 2018 office visit. Corilyn Pang, M.D., wrote:

> SUBJECTIVE:
> Here to establish care
> Moved here from Memphis 2 y ago
> Runs half mile daily, stretches BID, core, ROM
>     exercises every AM
> Swims all day (scuba as dive mechanic on week
>     days)
> Massage therapy on weekends
> MVI
> Protein shake in the AM
> Grains and vegetables and fruit
> Prepares most of his own food
> Working on starting french southern hawaiian
>     [sic] fusion restaurant

26

[Exh. 3F at 38-39, AR at 398-99 (dkt. no. 5-8 at PageID.418-19).] This statement clearly includes some historical information about Plaintiff and some information that was current at the time of the visit. The statement about swimming all day refers to the period before Plaintiff's motorcycle accident because Dr. Pang noted that Plaintiff was working as a dive mechanic, and it is undisputed that Plaintiff worked as a dive mechanic before the accident and did not engage in substantial gainful activity after the accident. See Decision, AR at 20 (dkt. no. 5-3 at PageID.35); see also Hrg. Trans., AR at 55 (dkt. no. 5-3 at PageID.70) (Plaintiff testified that he is not able to work as a dive mechanic because he is unable to turn to his left, he cannot "swim for long periods," and he has "no mobility"). The ALJ's findings that Plaintiff could swim all day and swim on a daily basis were not supported by the record and therefore it was not a convincing reason to reject Plaintiff's subjective symptom testimony.

During the hearing before the ALJ, Plaintiff acknowledged that he was running for half a mile every day two months after the accident. Plaintiff was also going to beach to work on his mobility, as his physical therapist instructed him to do. However, Plaintiff testified that he stopped doing that after the fall he had a year or two prior to the October 27, 2021 hearing. [Hrg. Trans., AR at 51 (dkt. no. 5-3 at

27

PageID.66).] The ALJ relied on a May 1, 2019 Progress Note by Dr. Pang, which noted Plaintiff said he intended to go running that morning, but he blacked out after he put one of his shoes on. See Decision, AR at 26 (dkt. no. 5-3 at PageID.41); Exh. 4F/24, AR at 495 (dkt. no. 5-8 at PageID.515). This note does not indicate that Plaintiff actually went running on May 1, 2019, let alone that he was still running half a mile every day. Further, the note is consistent with Plaintiff's testimony that he could still run until his fall.

In Plaintiff's Function Report, which he signed on May 6, 2019, Plaintiff estimated that he could **walk** for half a mile before needing to stop and rest, and he would need to rest for thirty to sixty minutes before continuing to walk. [Exh. 5E/6, AR at 227 (dkt. no. 5-7 at PageID.246).] After a June 24, 2020 exam, Dr. Cao noted that Plaintiff lives alone, takes the bus and "walks : 1 mile." [Exh. 8F/1, AR at 611 (dkt. no. 5-9 at PageID.632).] The October 24, 2020 Benefit Employment Support Services Division Physical Examination Report by Dr. Teruya noted that Plaintiff could walk for ten to twenty minutes. [Exh. 12F/8, AR at 804 (dkt. no. 5-11 at PageID.827.] Dr. Donovan's Psychological Evaluation, dated July 19, 2021 – i.e., approximately three months before the administrative hearing, noted that Plaintiff "no longer walks the neighborhood due to concerns about having a blackout/seizure," and his daily

routine includes "a short walk up and down his driveway," followed by rest." [Exh. 14F/2, AR at 1051 (dkt. no. 5-12 at PageID.1075).]

In the December 26, 2019 Progress Notes, Melissa L. Belanger, Psy.D., noted: "Hobbies/Interests: Exercise: jogs, core training, stretching. Daily meditation. Movies, music, works on cars." [Exh. 9F/68, AR at 693 (dkt. no. 5-10 at PageID.715).] Except for the notation of daily meditation, which suggests that Plaintiff was still meditating every day, it is unclear if Plaintiff was still able to engage in the type of exercise that he expressed an interest in. The August 5, 2020 Progress Notes by Dr. Valdez stated Plaintiff "continues to work out on a daily basis and practice meditation." [Exh. 9F/23, AR at 648 (dkt. no. 5-10 at PageID.670).] However, this note does specify what Plaintiff's daily workout consisted of.

Considering the exhibits that the ALJ cited as well as the record as a whole, the ALJ's findings that Plaintiff could run for half a mile a day and jog on a daily basis were not supported by the record and therefore it was not a convincing reason to reject Plaintiff's subjective symptom testimony.

The fact that Plaintiff lives alone, prepares simple meals like a bowl of cereal or a sandwich, and does his laundry does not indicate that he is capable of full-time employment or that his statements about his subjective symptoms are not

29

credible. Plaintiff only prepares his own meals one or two times a week and it takes him one or two hours to do so, and he only does laundry once a week. [Exh. 5E/1, AR at 222, (dkt. no. 5-7 at PageID.241); Exh. 5E/3, AR at 224 (dkt. no. 5-7 at PageID.243).]

Plaintiff's Function Report also stated his friends came to visit him one or two times a month, and they would "sit and talk." [Exh. 5E/5, AR at 226 (dkt. no. 5-7 at PageID.245).] Dr. Donovan noted that Plaintiff's daily routine includes visiting his next-door neighbor, which was "his most frequent interaction." [Exh. 14F/2, AR at 1051 (dkt. no. 5-12 at PageID.1075).]

Plaintiff stated in his Function Report that he is able to drive, but "only when necessary," and he is able to use public transportation and go out unaccompanied. [Exh. 5E/4, AR at 225 (dkt. no. 5-7 at PageID.227).] Approximately two years later, Dr. Donovan noted in his Psychological Evaluation that Plaintiff no longer drives. [Exh. 14/2, AR at 1051 (dkt. no. 5-12 at PageID.1074] According to Plaintiff's Function Report, he only left his house once or twice a week. He was able to go to medical appointments, but he sometimes needed someone to accompany him. [Exh. 5E/4-5, AR at 225-26 (dkt. no. 5-7 at PageID.227-28).]

The activities cited by the ALJ neither indicate that he is capable of working full-time, nor do they demonstrate an inconsistency with Plaintiff's testimony about his subjective symptoms and his limitations. Therefore, they are not relevant to Plaintiff's credibility. See Reddick, 157 F.3d at 722. The ALJ's analysis of Plaintiff's daily activities violates the principle that "[a] claimant does not need to be utterly incapacitated in order to be disabled." See Revels v. Berryhill, 874 F.3d 648, 667 (9th Cir. 2017) (citation and internal quotation marks omitted).

B.   **Conservative Treatment**

In finding that Plaintiff's subjective symptom testimony was not credible, the ALJ noted that Plaintiff "was treated conservatively with medications, physical therapy, and injections." [Decision, AR at 25 (dkt. no. 5-3 at PageID.40) (citation omitted).] "Evidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment." Smartt v. Kijakazi, 53 F.4th 489, 500 (9th Cir. 2022) (brackets, quotation marks, and citation omitted). However, "[a]ny evaluation of the aggressiveness of a treatment regimen must take into account the condition being treated." Revels, 874 F.3d at 667. In Revels, the Ninth Circuit considered the type of medications the plaintiff was prescribed, the

31

injections she received, and the ALJ's lack of explanation why the treatment she received was considered conservative. Id.

In the instant case, Plaintiff testified that he no longer takes pain medication, but he explained that the reason for this was that his doctors never found a medication that worked for him. See Hrg. Trans., AR at 41-42 (dkt. no. 5-3 at PageID.56-57); see also id. at 53 (dkt. no. 5-3 at PageID.68) (stating his doctors have prescribed him seven or eight different pain medications). Plaintiff also testified that he has received several spinal blocks and injections, but they only provided a day or two of relief, and his doctors have discussed surgery with him, but they said he was not a candidate for surgery. [Hrg. Trans., AR at 42 (dkt. no. 5-3 at PageID.57).] Plaintiff's testimony is supported by the medical records. For example, the April 2, 2020 Progress Notes by Dr. Cheng-Leever stated:

> Unfortunately, to date he has failed:
> 1. IM steroid injections to paraspinals 10/5/2018
> 2. Left C4-5 interlaminar epidural steroid injection 11/29/2018
> 3. Left C4-5 facet joint block on 04/29/2019
> 4. Left C3-4 and C4-5 intra-articular facet joint blocks 7/11/2019
> 5. Left C3-4 epidural steroid injection 10/04/2019[.]
>
> He has failed or been unable to tolerate:
> Duloxetine, nortriptyline, gabapentin, levetiracetam[.]

> He recalls Lyrica seem to help but then seemed to
> stop working. He was taking as much as Lyrica 25
> mg 2 tablets b.i.d.
>
> He also failed chiropractic care, massage therapy
> and acupuncture[.]
>
> . . . .
>
> Plan:
> 1. Will restart Lyrica 25 mg b.i.d. and gently
> titrate upward as tolerated to a maximum of 300
> mg per day in divided dose
> . . . .

[Exh. 9F/36, AR at 661 (dkt. no. 5-10 at PageID.686).] On

April 14, 2020, Dr. Cheng-Leever noted:

> Unfortunately this titration of Lyrica has not
> helped at all. At 100 mg of Lyrica b.i.d. there
> is absolutely no change in his pain. His morning
> pain is a 10/10 and after moving around warming
> up 8/10.
>
> At this point I have nothing more to offer.
> Hopefully as his seizures are controlled, he
> stops re-injuring himself and working with
> psychologist his pain will settle down.

[Exh. 9F/35, AR at 660 (dkt. no. 5-10 at PageID.685).]

Further, the ALJ did not explain why the treatment

that Plaintiff received was deemed "conservative." This Court

therefore concludes that the ALJ erred in rejecting Plaintiff's

subjective symptom testimony on the ground that he only received

routine and conservative treatment.

### C.    ALJ's Observation of Plaintiff

The ALJ noted that Plaintiff's subjective symptom

testimony was inconsistent with the ALJ's observations of

33

Plaintiff during the hearing because Plaintiff did not appear to have "any difficulty concentrating, understanding, or remembering." [Decision, AR at 26 (dkt. no. 5-3 at PageID.41).] While the ALJ's observations are important and insightful,

> [t]he ALJ's observations of a claimant's functioning may not form the sole basis for discrediting a person's testimony. See S.S.R. 96–7p at 8 ("[T]he adjudicator is not free to accept or reject the individual's complaints solely on the basis of . . . personal observations."), *available at* 61 Fed. Reg. at 34,488. Instead, an ALJ's personal observations may be used only in "the overall evaluation of the credibility of the individual's statements." Id.

Orn, 495 F.3d at 639 (alterations in Orn). Because the ALJ's other reasons for rejecting Plaintiff's subjective symptom testimony fail, the ALJ's personal observations alone cannot support the ALJ's adverse credibility finding.

This Court finds that the ALJ failed to provide specific, clear, and convincing reasons, supported by substantial evidence, for rejecting Plaintiff's testimony about the extent of his symptoms and their limiting effect.

## III. **Failure to Consider Medical Opinions**

This Court next turns to Plaintiff's argument that the ALJ failed to give proper consideration to the medical opinions of Dr. Reed and Dr. Donovan. Further, Plaintiff argues the ALJ improperly rejected his doctors' opinions as a whole, instead of addressing each doctor's opinions individually. See Opening

34

Brief at 7; see also Decision, AR at 28 (dkt. no. 5-3 at
PageID.43). Specifically, the ALJ failed to address the opinions
of Dr. Valdez, Dr. Cao, Dr. Taylor, Dr. Kau, Dr. Lee,
Dr. Harding, Dr. Cheng-Leever, Dr. Thompson, and Dr. Teruya.

Title 20 Code of Federal Regulations
Section 404.1520c, which governs claims filed on or after
March 27, 2017, states the Social Security Administration

> will not defer or give any specific evidentiary
> weight, including controlling weight, to any
> medical opinion(s) or prior administrative
> medical finding(s), including those from your
> medical sources. When a medical source provides
> one or more medical opinions or prior
> administrative medical findings, we will consider
> those medical opinions or prior administrative
> medical findings from that medical source
> together using the factors listed in paragraphs
> (c)(1) through (c)(5) of this section, as
> appropriate. The most important factors we
> consider when we evaluate the persuasiveness of
> medical opinions and prior administrative medical
> findings are supportability (paragraph (c)(1) of
> this section) and consistency (paragraph (c)(2)
> of this section)).

20 C.F.R. § 404.1520c(a).

As to supportability, Section 404.1520c(c)(1) states:
"The more relevant the objective medical evidence and supporting
explanations presented by a medical source are to support his or
her medical opinion(s) . . . , the more persuasive the medical
opinions. . . will be." As to consistency,
Section 404.1520c(c)(2) states: "The more consistent a medical
opinion(s) . . . is with the evidence from other medical sources

and nonmedical sources in the claim, the more persuasive the
medical opinion(s) . . . will be."

### A.  __Dr. Reed and Dr. Donovan__

The ALJ found Dr. Reed's opinions to be unpersuasive,
in part because they were inconsistent with Plaintiff's "ability
to engage in a wide range of activities." [Decision, AR at 27
(dkt. no. 5-3 at PageID.42).] The ALJ erred in the consistency
analysis because, as discussed in the context of the ALJ's
adverse credibility analysis, the ALJ's findings regarding
Plaintiff's continued ability to jog and swim were erroneous,
and Plaintiff's activities of daily living, such as laundry and
preparing meals were limited.

In addition, the ALJ noted that Dr. Reed's opinions
were inconsistent with, and were not supported by, the "benign
objective findings with routine and conservative treatment
regimen." [Id.] This Court has concluded that the ALJ's
characterization of Plaintiff's treatment as conservative was
not a valid basis to reject Plaintiff's subjective symptom
testimony. For the same reasons, this Court also concludes that
the ALJ erred in relying on Plaintiff's purportedly conservative
treatment in the analysis of Dr. Reed's opinions.

The ALJ also relied on the routine and conservative
nature of Plaintiff's treatment and Plaintiff's activities as
grounds to find Dr. Donovan's opinions unpersuasive. [Id., AR at

27-28 (dkt. no. 5-3 at PageID.42-43).] Thus, the ALJ's analysis of Dr. Donovan's opinions was erroneous.

### B.  **Collective Analysis**

The ALJ made a general finding that "the opinions of [Plaintiff's] doctors" were unpersuasive, without an individual discussion regarding several doctors. See id. at 28 (dkt. no. 5-3 at PageID.43); see also *supra* n.8 (listing the doctors who Plaintiff argues are referred to in the ALJ's finding). The Social Security Administration's regulations state that:

> Because many claims have voluminous case records containing many types of evidence from different sources, it is not administratively feasible for us to articulate in each determination or decision how we considered all of the factors for all of the medical opinions and prior administrative medical findings in your case record. Instead, when a medical source provides multiple medical opinion(s) or prior administrative medical finding(s), **we will articulate how we considered the medical opinions or prior administrative medical findings from that medical source together in a single analysis** using the factors listed in paragraphs (c)(1) through (c)(5) of this section, as appropriate. We are not required to articulate how we considered each medical opinion or prior administrative medical finding from one medical source individually.

20 C.F.R. § 404.1520c(b)(1). The Commissioner argues the regulations do not require ALJs to "articulate how they considered medical opinions from different medical sources individually"; it is sufficient that an ALJ "explain only the most important factors of supportability and consistency, and

37

the Ninth Circuit has held that this discussion 'must simply be supported by substantial evidence.'" [Answering Brief at 6 (quoting Woods v. Kijakazi, 32 F.4th 785, 787 (9th Cir. 2022)).]

The Commissioner's argument misplaced. Section 404.1520c(b) requires that the decision of the Social Security Administration "'articulate . . . how persuasive' it finds 'all of the medical opinions' from **each doctor** or other source, 20 C.F.R. § 404.1520c(b), and 'explain how [it] considered the supportability and consistency factors' in reaching these findings, id. § 404.1520c(b)(2)." Woods, 32 F.4th at 792 (alterations in Woods) (emphasis added); see also 20 C.F.R. § 404.1502 (stating an "[a]cceptable medical source means a medical source who is a: (1) Licensed physician (medical or osteopathic doctor); (2) Licensed psychologist . . . ."). Thus, the ALJ was required to articulate a supportability and consistency analysis for each medical source.

The Commissioner argues that the ALJ was not required to analyze medical opinions rendered by doctors in the course of Plaintiff's state benefits determinations. [Answering Brief at 7-8.] Title 20 Code of Federal Regulations Section 404.1504 states, in pertinent part:

> Other governmental agencies and nongovernmental entities—such as . . . State agencies, and private insurers— make disability, blindness, employability, Medicaid, workers' compensation, and other benefits decisions for their own

38

> programs using their own rules. Because a
> decision by any other governmental agency or a
> nongovernmental entity about whether you are
> disabled, blind, employable, or entitled to any
> benefits is based on its rules, it is not binding
> on us and is not our decision about whether you
> are disabled or blind under our rules. Therefore,
> in claims filed (see [20 C.F.R.] § 404.614) on or
> after March 27, 2017, we will not provide any
> analysis in our determination or decision about a
> decision made by any other governmental agency or
> a nongovernmental entity about whether you are
> disabled, blind, employable, or entitled to any
> benefits. . . .

However, Dr. Valdez and Dr. Cheng-Leever were among Plaintiff's treating doctors, and the ALJ was required to articulate an analysis of each doctor's opinions. The Commission argues that it can be inferred from the Decision that the ALJ found Dr. Valdez's and Dr. Cheng-Leever's opinions to be less persuasive and that, based on the record, the ALJ's findings were reasonable. [Answering Brief at 6-7.] This Court cannot assume that the ALJ made the analysis suggested by the Commissioner here. See Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1225-26 (9th Cir. 2009) ("Long-standing principles of administrative law require us to review the ALJ's decision based on the reasoning and factual findings offered by the ALJ—not post hoc rationalizations that attempt to intuit what the adjudicator may have been thinking." (some citations omitted (citing SEC v. Chenery Corp., 332 U.S. 194, 196, 67 S. Ct. 1575, 91 L. Ed. 1995 (1947))). This Court therefore concludes that the

ALJ erred by failing to conduct a separate analysis of
Dr. Valdez's and Dr. Cheng-Leever's opinions.

**IV.   Whether the Errors Were Harmless**

        This Court has concluded that the ALJ erred in the
rejection of Plaintiff's subjective symptom testimony and in the
analysis of Dr. Reed's, Dr. Donovan's, Dr. Valdez's and
Dr. Cheng-Leever's opinions. This Court cannot find that the ALJ
would have made the same RFC finding if the ALJ had properly
considered Plaintiff's subjective symptom testimony and those
doctors' opinions. It is reasonably likely that the ALJ would
have made a more restrictive RFC finding and may have ultimately
concluded that Plaintiff was disabled.

        This Court therefore finds that that the ALJ's errors
were not harmless. See Treichler, 775 F.3d at 1099 ("An error is
harmless if it is 'inconsequential to the ultimate nondisability
determination.'" (quoting Alaska Dep't of Envtl. Conserv. v.
EPA, 540 U.S. 461, 497, 124 S. Ct. 983, 157 L. Ed. 2d 967
(2004))).

        In light of this Court's rulings, the ALJ's ultimate
ruling that Plaintiff was not disabled was not supported by
substantial evidence. To the extent that Plaintiff's Appeal
raises arguments which are not specifically addressed in this
Order, it is not necessary for this Court to reach those
arguments. This Court makes no findings or conclusions regarding

those arguments. Plaintiff's Appeal is granted insofar as the ALJ's Decision, including the ruling that Plaintiff is not disabled, is reversed. The case is remanded to the ALJ for further proceedings consistent with this Order.

## CONCLUSION

For the foregoing reasons, Plaintiff's appeal from the Administrative Law Judge's December 28, 2021 Decision is HEREBY GRANTED IN PART AND DENIED IN PART. The Appeal is: DENIED as to Plaintiff's challenge to the ALJ's findings regarding Plaintiff's severe impairments; GRANTED as to Plaintiff's challenge to the ALJ's adverse credibility determination; and GRANTED as to Plaintiff's challenge to the ALJ's analysis of the medical opinions. This case is REMANDED to the ALJ for further proceedings consistent with the instant Order. There being no remaining issues in this case, the Court DIRECTS the Clerk's Office to enter judgment and close on **March 14, 2024**, unless a timely motion for reconsideration of the instant Order is filed.

IT IS SO ORDERED.

DATED AT HONOLULU, HAWAII, February 28, 2024.



/s/ Leslie E. Kobayashi
Leslie E. Kobayashi
United States District Judge

<u>CHARLES BURRELL VS. KOLOLO KIJAKAZI, ACTING COMMISSIONER OF</u>
<u>SOCIAL SECURITY</u>; CV 23-00142 LEK-RT; ORDER:  GRANTING IN PART
AND DENYING IN PART PLAINTIFF'S APPEAL; REVERSING THE
ADMINISTRATIVE LAW JUDGE'S DECISION; AND REMANDING THE CASE FOR
FURTHER PROCEEDINGS